C O P Y

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WINDY RICHARDS,

                 Plaintiff,

     v.

BIVONA & COHEN PC, JOSEPH
FIGLIOLO, JOHN BIVONA, RODERICK
COYNE, JAN MICHAEL RYFKOGEL,
ANDREW SAPON, ROBERT MACCHIA,
RICHARD KUBIK, MARLENE
MONTELEONE, and JOHN/JANE DOES 1-
10,

                 Defendants.
-------------------------------------------------------x

**COMPLAINT**

'08   Jury Trial Demanded   CIV 4453

Docket No. _____



RECEIVED
MAY 12 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Windy Richards, alleges as follows:

## PRELIMINARY STATEMENT

1.         This is a shocking case involving the sexual assault of a female legal secretary by a senior partner at a New York City law firm. It also includes an extraordinary campaign of retaliation by the firm against the victim after she reported the incident.

2.         Windy Richards is a 37 year old, single mother of three children who began working as a legal secretary at Bivona & Cohen, PC ("Bivona & Cohen" or "the Firm") in August 2007. Over the course of her employment at Bivona & Cohen, Ms. Richards was subjected to a relentless, cruel, predatory, and extreme campaign of sexual harassment and inappropriate conduct by a senior partner at the firm, Joseph

Figliolo. Remarkably, the Firm and those who controlled its affairs did nothing to discourage or discipline Figliolo or curtail his glaring misconduct. In fact, Figliolo's abusive conduct had been evident for years at the Firm and was widely known among those who worked there. Rather than rein him in or discourage him in any way, many of Figliolo's fellow partners participated in his sexually demeaning and degrading remarks and behavior. Unchecked and effectively ratified by the Firm, Figliolo's unlawful behavior persisted and on or about November 16, 2007 – in an astonishing episode – Figliolo raped Ms. Richards in his office during work hours.

3.      In addition to complicity in the actual assault – by its years-long tolerance and encouragement of a sexually hostile work environment – Bivona & Cohen and its coterie of partners compounded and extended their responsibility for this egregious set of circumstances by their wholesale failure to follow the most basic, lawful protocol after the sexual assault occurred. Then, in a remarkable act of retaliation, after Ms. Richards complained of the assault and retained counsel to represent her, the Firm *sued her* in state court, basing its suit on fabrications and a host of frivolous legal claims.

4.      The law firm hired to represent Bivona & Cohen, Epstein Becker & Green, P.C. ("Epstein Becker"), boasts on its website that it has pioneered the use of "preemptive litigation" as a tactic to defend employers in employment discrimination lawsuits. In this case, Epstein Becker filed its "preemptive" suit against Ms. Richards *with a press release*. This tabloid approach has only exacerbated Ms. Richards' injury by subjecting her to further embarrassment, humiliation and intimidation. She now brings this federal action to vindicate her rights and seek redress for the horrific wrongs committed against her.

## PARTIES, JURISDICTION AND VENUE

5.           At all times relevant hereto, Plaintiff Windy Richards has been employed by Bivona & Cohen as a legal secretary, and resides in Bronx, New York.

6.           At all times relevant hereto, Bivona & Cohen PC was a law firm with offices at 88 Pine Street, New York, New York 10005, employing over 100 individuals, including approximately 60 attorneys.

7.           At all times relevant hereto, Defendant Joseph Figliolo has been a senior partner at Bivona & Cohen. Defendant Figliolo has long engaged in abusive, harassing and discriminatory behavior toward staff at the Firm, including without limitation, sexual harassment of predominantly women of color who serve as staff at the Firm.

8.           At all times relevant hereto, Defendant John Bivona has been a senior partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

9.           At all times relevant hereto, Defendant Roderick Coyne has been a partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

10.           At all times relevant hereto, Defendant Jan Michael Ryfkogel has been a partner at Bivona & Cohen and has participated in the sexual harassment,

degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

11.    At all times relevant hereto, Defendant Andrew Sapon has been a partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

12.    At all times relevant hereto, Defendant Robert Macchia has been a partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

13.    At all times relevant hereto, Defendant Richard Kubik has been a partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

14.    At all times relevant hereto, Defendant Marlene Monteleone has been a partner at Bivona & Cohen and has participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

15.     At all times relevant hereto, Defendants John/Jane Doe 1-10 are individuals at Bivona & Cohen who have participated in the sexual harassment, degradation, discrimination and/or retaliation of women at the Firm and/or knew or should have known of the harassing, abusive, discriminatory and/or retaliatory environment at the Firm, and took no corrective action.

16.     Jurisdiction of this Court is proper under 28 U.S.C. § 1331, Title VII, 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 1981. The Court additionally has supplemental jurisdiction over state and city law claims pursuant to 28 U.S.C. § 1367.

17.     As the Southern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this District pursuant to 28 U.S.C. § 1391(a)(2). Pursuant to Section 8-502(c) of the City Law, Plaintiff will serve a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

18.     Plaintiff filed a charge with the United States Equal Opportunity Employment Commission ("EEOC") against Bivona & Cohen on or about May 1, 2008, complaining of the acts of sexual harassment and assault, sex, race, color, ethnic, national origin and disability discrimination, and retaliation alleged herein. On or about May 9, 2008, the EEOC issued Plaintiff a notice of right to sue. Plaintiff has fully complied with the administrative prerequisites of Title VII.

## FACTUAL ALLEGATIONS

***Background***

19.     Plaintiff is 37 years old and a single mother of three children. Although a United States Citizen, Ms. Richards' parents are from the Dominican

Republic. She is an experienced legal secretary who has worked at a variety of New York law firms, both large and small.

20.     In late August 2007, Ms. Richards was hired as a legal secretary by Bivona & Cohen. From the outset of her employment, Ms. Richards was subjected to sexual harassment and inappropriate conduct by Figliolo. Indeed, at the conclusion of Ms. Richards' initial interview, Figliolo remarked with a smirk that he knew he was going to like having Ms. Richards at the Firm because she had used the phrase "hump day" in referring to Wednesday (with his emphasis on the word "hump").

21.     Although Ms. Richards was hired to work as an assistant to Eva Tam and Matthew Baron of the Firm – and thus was not directly working for Figliolo – Figliolo made a point of seeking out Ms. Richards and engaging in predatory and harassing conduct. Figliolo repeatedly made lewd sexual remarks and crude, unwanted advances toward Ms. Richards. Typical of the lewd statements Figliolo made to Ms. Richards were: "You have a terrific ass," "J.Lo's got nothing on you," "You are so hot," and "I don't think it matters what you wear, you have such a great ass, your body would make any clothes look amazing."

22.     Because Ms. Richards was not hired to assist him, Figliolo ordinarily should have obtained work files and other documents from his own secretary or from other attorneys. Soon after her employment started, however, Figliolo began a practice of summoning Ms. Richards to his office with a pretextual request that she deliver materials to him. As she would leave his office, he would tell her, "I really just wanted to watch you walk out of my office, so I could see that great ass of yours."

23.     Ms. Richards was offended and disgusted by Figliolo's behavior,

but faced the classic dilemma of the subordinate harassment victim fearful of challenging a powerful superior. Her trepidation in challenging or reporting this misconduct was exacerbated by her compelling need for work (she is the sole provider for her three children) and by her understanding that such harassment was tolerated – and even appeared to be encouraged – by the culture at the Firm, a fact made plain during her first interaction with Figliolo where inappropriate comments were made in front of others, with no objection or responsive discipline.

24.        In addition, Ms. Richards had been told that she was on a 90-day probationary period during which she could be fired for any reason or no reason at all. Nor was Ms. Richards told what to do if she experienced a problem at Bivona & Cohen, much less what help and procedures were available to her if she were subjected to this kind of reprehensible sexual harassment.

25.        In contrast to Ms. Richards' vulnerable and subordinate status within the firm, Figliolo's power at Bivona & Cohen in general, and over Ms. Richards in particular, was open and notorious. A 60 year-old senior supervising partner with an exceptionally large corner office, Figliolo appeared to control much of the work at the firm and is married to a named partner's sister. Figliolo was regularly observed shouting at and intimidating junior partners and attorneys as well as assistants. He ordered everyone about, and had the recognized power of directing the office manager, even when such direction was contrary to normal office policy or rules.

26.        This sexually charged and inappropriate environment and Figliolo's prominent place in it were common knowledge and had persisted for many years at the firm. Not only did witnesses laugh and smirk at Figliolo's "hump" remark

during Ms. Richards's interview, but other staff specifically recognized and noted that
Figliolo had reckless sexual proclivities and a specific sexualized interest in Ms.
Richards. At least one staff member noted that although Figliolo's large corner office
was all the way at the other end of the hallway, he regularly made extraordinary
excursions to Ms. Richards' area and cubicle.

27.        On another occasion, when it appeared that Ms. Richards would be
working for a different Bivona & Cohen associate, Gerald Cowen, as his assistant,
Figliolo was overheard loudly telling Cowen in his office: "Wait until you see your
assistant – just wait till you see how she looks, and you see her ass."

28.        On a day that Ms. Richards was required to sit as Figliolo's
secretary because his regular assistant was out, he was heard saying loudly into the
telephone nearly all day that people should "see the assistant I have today" and that they
should observe how gorgeous and attractive her body was, using an Italian expletive as
he referenced her.

29.        The demeaning remarks directed at or about Ms. Richards were
only the most recent spate of widely observed remarks and conduct which made
conditions at Bivona & Cohen inappropriate and intolerable. For years, Figliolo had a
regular and reprehensible practice of joking about women's breasts, legs and bodies
loudly in the halls, often with other partners, associates or paralegals, and of loudly
discussing his sexual exploits.

30.        In particular, Figliolo was frequently observed to have engaged in
these loud, demeaning and harassing conversations with, at a minimum, John Bivona,
Roderick Coyne, Jan Michael Ryfkogel, Andrew Sapon and/or Robert Macchia. These

8

conversations were regularly laced with profanity and other vulgar or crude language.

31.        More disturbing and objectionable than these verbal transgressions was a long-standing and widely known practice by Figliolo of inappropriate physical contact and touching. On a regular basis, Figliolo required and forced women in the office to massage or scratch his back. Although this physical contact was clearly unwanted and plainly inappropriate, the woman felt coerced to participate in this activity because of Figliolo's status at the firm and his threatening and intimidating demeanor.

32.        Not surprisingly, Figliolo was not the only partner at the firm engaging in this behavior. Another partner, Andrew Sapon, was regularly observed caressing another assistant's back and hair, without anyone telling him to stop or indicating such behavior was inappropriate. In the past, other partners were also observed engaging in this kind of unlawful contact as well.

33.        On information and belief, the remarks, harassment and abuse were most commonly directed at or towards the female support staff at the New York office, who were overwhelmingly women of color, often Hispanic or African American. On information and belief, Bivona & Cohen and its member partners, in particular, Joseph Figliolo, John Bivona, Roderick Coyne, Jan Michael Ryfkogel, Andrew Sapon, Robert Macchia, Richard Kubik, Marlene Monteleone, and John/Jane Doe 1-10 all participated in, knew, and/or should have known of the harassing, discriminatory and abusive environment at the Firm, but failed to take corrective action. In addition, on information and belief, other complaints of misconduct, sexual harassment, discrimination and retaliation have been made, but defendants failed to take appropriate and/or sufficient corrective action.

34.        Given Figliolo's position within the firm, Ms. Richards' probationary status, her need to support her children and the fact that the firm openly condoned Mr. Figliolo's and others' offensive behavior, Ms. Richards perceived no safe, effective route for reporting or stopping Figliolo.  She did her best to avoid and ignore him, and as tactfully as she perceived possible – with the overriding imperative of keeping her job – she objected to his mistreatment of her (telling him his behavior was terrible, horrible and inappropriate).  But Figliolo was immune to the objections, did not take them seriously and remained undeterred.

**Figliolo's Sexual Assault of Ms. Richards**

35.        On Friday, November 16, 2007, Ms. Richards was told she had to cover for Figliolo's regular assistant.  Although she dreaded the assignment, she had no viable way of resisting it and keeping her job.

36.        On that day, sometime around 2:00 p.m., Figliolo returned from lunch.  He was inebriated and reeking of alcohol.  In fact, Figliolo maintained hard liquor in his office, had it regularly delivered there, and frequently abused it during work hours.  On a regular basis, and for many years, Figliolo and others drank, sometimes heavily, during the work day.

37.        Shortly thereafter, he summoned Ms. Richards to his office.  Ms. Richards responded by entering the office with mail, messages and documents for his signature.  Sitting across the desk from Figliolo, Ms. Richards observed that he reeked of alcohol and was intoxicated.  After a brief period, Figliolo directed Ms. Richards to close the door to his office.  Ms. Richards complied.  After she closed the door and turned back around, Figliolo began a series of derogatory and lewd comments, including asking Ms.

Richards if she had ever given anyone a lap dance.

38.　　　Although disturbed by his remarks, in Ms. Richards' experience, it was not out of the ordinary for Mr. Figliolo to behave that way. She tried to ignore him and walked over to deposit a stack of documents she had brought into the office on a credenza near Figliolo's desk. Ms. Richards was completely unprepared for Figliolo's becoming physically violent. Immediately after placing the documents down, however, Figliolo forcibly grabbed Ms. Richards by her wrists. Figliolo is an exceptionally large and – relative to Ms. Richards – powerful man.

39.　　　Figliolo grabbed Ms. Richards and stated, "I want to fuck you." Then, using the force of his body, he swung Ms. Richards around so that her upper torso was thrown down over his desk and her legs and backside were facing him. Though she resisted and pleaded with him to stop, he was physically too strong and overpowered her. Within seconds, Figliolo had torn down Ms. Richards' stockings and forced himself on her, ejaculating eventually, including on her body and legs. When finished, he gave Ms. Richards a towel and told her to clean up.

40.　　　At the conclusion of Figliolo's violent sexual assault, Ms. Richards was shattered, profoundly disoriented and in a state of severe shock. She was emotionally wrecked and weeping. Recognizing what he had done, Figliolo desperately began attempting to reassure Ms. Richards, saying he would take care of everything for her by paying her rent, paying for vacations, and buying her things. In the same breath, he emphasized that she had to keep quiet about what had happened.

41.　　　After wiping the semen from her body, Ms. Richards was able to sufficiently compose herself and exit Figliolo's office. She then struggled to the

11

women's bathroom down the hall, and immediately vomited.

### Reporting of the Rape: Bivona & Cohen's Indifference, Inaction and Public Retaliation

42.     As the sole source of support for three children, Ms. Richard's intuitive response – despite having been traumatized by the rape *at work* – was not to lose her job. In her own mind, at least initially, leaving work meant abandoning her children by eliminating their only means of financial support. As a result, Ms. Richards made awkward, painful and ultimately ineffective efforts to return to the office. It was not easy. In the aftermath of the attack, on multiple occasions, she would weep on the subway or vomit outside on the street on her way to the office. At home, she barely slept, was plagued by nightmares, was forced to obtain prescription medication, first to help with sleep and then to control extreme anxiety, hyperventilation and panic attacks. When she was awake, she suffered from depression, felt herself utterly helpless, lost, shamed and a complete failure.

43.     On the Monday following the rape, Ms. Richards tried to confide in a person in the office who she thought would be sensitive and console her. Unfortunately, the response was dismissive and ignorant, confirming fears that the firm environment was unsafe, that reporting would be pointless, if not perilous, and that she should keep quiet.

44.     Ms. Richards believed there was nothing she could do about the rape. As a result, she attempted to soldier on and repress the experience, thus retaining her sole source of income. The emotional strain of doing so, however, was extreme. Ms. Richards continued to have nightmares, difficulty sleeping and suffered from repeated vomiting, hyper-ventilation and panic attacks. After weeks of this, she decided to speak

to Richard Kubik, a junior partner at Bivona & Cohen for whom she occasionally worked.

45.        In approximately the second week of January 2008, she told Kubik that Figliolo had raped her in his office during work hours.  Kubik's response appeared, superficially at least, to be one of shock and concern.  Ultimately, however, he told Ms. Richards that *she* had to be ready to do something about this, and that he would not do anything alone because it was such a sensitive matter.

46.        After brusquely dropping the ball and essentially conveying to Ms. Richards that she was on her own, Kubik never again raised the issue with Ms. Richards and over the course of the next month actually appeared to avoid and shun her.

47.        Despite the fact that he is a partner at the Firm and had been presented with information and evidence that one of his partners had engaged in egregious criminal conduct, Kubik apparently did nothing to address or report it.

48.        Meanwhile, Ms. Richards continued to unravel.  Approximately two weeks after her futile attempt to get help from Kubik, Ms. Richards realized that she had been sitting, staring at her computer screen not doing anything at all, feeling depressed, helpless and lost.  Knowing that she could not go on like that any longer, she got up from her station and told Figliolo's assistant that she had been raped by Figliolo. The assistant was supportive and understanding, telling Ms. Richards a variety of details about Figliolo which confirmed his pattern of inappropriate behavior in other contexts and the Firm's pattern of doing nothing.

49.        That conversation was important and helpful to Ms. Richards. Partly as a result of it, Ms. Richards informed Bivona & Cohen's office manager of the

rape on February 12, 2008. Ms. Richards was very emotional during the interview with the office manager.

50.        After this meeting, Ms. Richards was told that she was going to meet with a "female counselor." Ms. Richards then met with Joan Gilbride, a lawyer from Kaufman Borgeest & Ryan LLP. Ms. Richards believed that Gilbride was there to help her and was in "no way affiliated" with the Firm, and was again very emotional. In reality, Ms. Gilbride was an attorney who had been retained as outside counsel to represent Bivona & Cohen.

51.        After Ms. Richards met with both the office manager and the Firm's attorney, she was eventually allowed to go home on February 12.

52.        Upon information and belief, the Firm allowed her to go home because of her demonstrably fragile and compromised mental health and her apparent inability to work given her condition. Nonetheless, thereafter, *the firm repeatedly instructed Ms. Richards to return to work (where she had been raped) or risk loosing her job.*

53.        Notwithstanding the unreasonable nature of this demand, to avoid losing her only source of income, Ms. Richards attempted to return to Bivona & Cohen after the February 12th meeting. The reception and treatment she received was openly hostile and otherwise inappropriate.

54.        Although Ms. Richards previously had had amicable relationships with co-workers at the Firm, she was treated as a pariah upon her return. With few exceptions, no one spoke to her at all; she was completely ostracized. The message, effectively delivered by nearly everyone at Bivona & Cohen during this period, was

unequivocal: by raising the matter and trying to address it, Ms. Richards was considered the problem. Far from a questionable or irrational fear, Ms. Richards' original concerns about reporting the rape to the Firm, given the culture there, turned out to be well-founded and prescient.

55.         On information and belief, the Firm has done nothing to discipline or reprimand Figliolo.

56.         Whether or not Ms. Richards' claims have been fully and properly investigated is also unclear.

57.         In fact, rather than take appropriate corrective action, Bivona & Cohen and those who control its affairs, have since *sued Ms. Richards* in a blatant and public retaliation against her for reporting the abusive and unlawful conduct that occurred at the Firm.

58.         The Firm has sued Ms. Richards in state court for such frivolous claims as "prima facie tort" and "interference with business relations." The charges and suit are based on the false allegations that Ms. Richards is extorting the firm.

59.         Ostensibly unsatisfied with a regular filing of this preemptive and retaliatory lawsuit, the Firm and its various members chose to issue a press release with their frivolous complaint, broadcasting to the world their unfounded claims against Ms. Richards.

60.         In addition, on information and belief, defendants have hired an individual or individuals who are aggressively taking actions to intimidate Ms. Richards by following her, disparaging her to friends and neighbors, and otherwise attempting to frighten her. On information and belief, such individual or individuals are undertaking

such acts at the specific direction of defendants.

61.        The harassment and abuse of Ms. Richards has caused and will continue to cause her significant harm. She suffered throughout her presence at the Firm, and continues to suffer through the memories of the abusive behavior and now from the ongoing retaliatory acts by the Firm against her.

## FIRST CAUSE OF ACTION

Unlawful Discrimination - Title VII, 42 U.S.C. § 2000e *et seq.*
Against Defendant Bivona & Cohen PC

62.        Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

63.        Bivona & Cohen is an employer as defined in Title VII, and at all relevant times herein, employed Ms. Richards.

64.        At all relevant times herein, defendant Bivona & Cohen discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, race, color, and/or perceived national origin in violation of Title VII, including without limitation by allowing for, encouraging and condoning: a sexually hostile, demeaning, degrading and abusive work environment; the disparate treatment, discrimination and degradation of female staff who are predominantly women of color; and/or other acts as detailed above.

65.        As a result of Bivona & Cohen's sexual harassment and discrimination against Ms. Richards, Plaintiff has been damaged and is entitled to compensatory damages, plus costs and attorneys' fees, and is further entitled to punitive damages.

## SECOND CAUSE OF ACTION
Unlawful Retaliation - Title VII, 42 U.S.C. § 2000e *et seq.*
Against Defendant Bivona & Cohen PC

66.        Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

67.        When Ms. Richards reported to Bivona & Cohen that Figliolo had raped her, and otherwise recounted and reported her hostile work environment, she was subjected to retaliation and further abuse, all of which adversely and severely impacted her position, career and well-being, and was designed to punish and retaliate against her for having complained about the humiliating and frightening treatment she was forced to endure.

68.        As a result of Defendants' unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to compensatory damages, plus costs and attorneys' fees, and is further entitled to punitive damages.   In particular, Defendants engaged in the subject retaliatory conduct with malice and reckless indifference to Plaintiff's federally protected rights, and such conduct, demonstrates reprehensible motives and such wanton dishonesty as to imply a criminal indifference to civil obligations.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1981

69.        Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

70.        At all relevant times herein, defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race, including without limitation by allowing for, encouraging and condoning: a sexually

hostile, demeaning, degrading and abusive work environment targeted at her because of her race; the differential treatment, discrimination and degradation of Ms. Richards and other female staff who are predominantly women of color; and/or other acts as detailed above.

71.        As a result of Defendants' discrimination of Ms. Richards, Plaintiff has been damaged and is entitled to compensatory damages, plus costs and attorneys' fees, and is further entitled to punitive damages.

### FOURTH CAUSE OF ACTION
42 U.S.C. § 1985

72.        Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

73.        At all relevant times herein, individual defendants agreed and conspired together to deter, by force, intimidation, or threat, Ms. Richards from pursuing and/or enforcing her civil rights in court and/or testifying truthfully to the racially discriminatory behavior of defendants, and/or agreed and conspired for the purpose of impeding, hindering, obstructing, or defeating the due course of justice, with intent to deny Ms. Richards  the equal protection of the laws, including without limitation by retaliating against Ms. Richards through a publicized, baseless lawsuit founded on false and frivolous claims, by threatening her termination, and by directing and/or directly intimidating Ms. Richards.

74.        As a result of Defendants' conspiracy, Plaintiff has been damaged and is entitled to compensatory damages, plus costs and attorneys' fees, and is further entitled to punitive damages.

## FIFTH CAUSE OF ACTION
Unlawful Discrimination and Retaliation – Americans With Disability Act
Against Defendant Bivona & Cohen PC

75.         Plaintiff repeats and realleges the above paragraphs as if fully set

forth herein.

76.         Bivona & Cohen is an employer as defined in the Americans With

Disability Act ("ADA"), and at all relevant times herein, employed Ms. Richards.

77.         At all relevant times herein, defendant Bivona & Cohen

discriminated and retaliated against Plaintiff in the terms and conditions of her

employment on the basis of her disability in violation of the ADA, including without

limitation by requiring Ms. Richards immediately to return to work despite her mental

health status and the obviously severe, detrimental effects that a return to work would

have on her mental health.

78.         As a result of Bivona & Cohen's discrimination and retaliation

against Ms. Richards on the basis of disability, Plaintiff has been damaged and is entitled

to compensatory damages, plus costs and attorneys' fees, and is further entitled to

punitive damages. and/or

## SIXTH CAUSE OF ACTION
Unlawful Discrimination and Retaliation - New York Executive Law
Against All Defendants

79.         Plaintiff repeats and realleges the foregoing allegations.

80.         The foregoing acts and practices of defendants constitute unlawful

discriminatory and retaliatory employment practices within the meaning of and in

violation of Section 296 of the New York State Executive Law.

81.         As a result of Defendants' sexual harassment and sex, race, color,

perceived national origin, and/or disability discrimination and retaliation against Plaintiff, she has been damaged and is entitled to compensatory damages.

## SEVENTH CAUSE OF ACTION
Unlawful Discrimination and Retaliation - New York City Administrative Code
Against All Defendants

82.    Plaintiff repeats and realleges the foregoing allegations.

83.    The foregoing acts and practices of defendants constitute unlawful discriminatory and retaliatory employment practices within the meaning of and in violation of Section 8-107(1)(a) of Title 8 of the New York Administrative Code.

84.    As a result of Defendants' sexual harassment and sex, race, color, perceived national origin, and/or disability discrimination and retaliation against Plaintiff, she has been damaged and is entitled to compensatory damages, punitive damages and attorneys fees and costs.

## EIGHTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress

85.    Plaintiff repeats and realleges the foregoing allegations.

86.    Defendants' actions complained of herein constitute extreme and outrageous conduct directed at plaintiff undertaken with the intent to cause plaintiff to suffer severe emotional distress or otherwise undertaken in reckless disregard of the substantial probability that such extreme and outrageous conduct would cause plaintiff to suffer severe emotional distress.

87.    Defendants' conduct as complained of herein is so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

88.    As a direct and proximate result of defendants' extreme and

outrageous conduct complained of herein, plaintiff has suffered extreme emotional distress.

89.        As a result of Defendants' sexual harassment and discrimination against Plaintiff, Plaintiff has been damaged and is entitled to compensatory and punitive damages and attorneys fees and costs.

## NINTH CAUSE OF ACTION
Assault and Battery - against Figliolo

90.        Plaintiff repeats and realleges the foregoing allegations.

91.        Figliolo's rape of Plaintiff constitutes an assault and battery.

92.        As a result of the foregoing actions of Figliolo, Plaintiff has been damaged and is entitled to compensatory and punitive damages.

## TENTH CAUSE OF ACTION
Negligence - against Bivona & Cohen, Defendants John Bivona, Roderick Coyne, Jan Michael Ryfkogel, Andrew Sapon, Robert Macchia, Richard Kubik, Marlene Monteleone, and John/Jane Doe 1-10 (collectively, "Negligence Defendants")

93.        Plaintiff repeats and realleges the foregoing allegations.

94.        The Negligence Defendants knew or reasonably should have known of Figliolo's behavior, including without limitation his long history of abusive and harassing conduct towards staff members, including without limitation toward support staff and Ms. Richards in particular, and/or his long history of alcohol abuse at the office.

95.        The Negligence Defendants knew or reasonably should have known of that Figliolo would assault Ms. Richards, but did nothing to prevent his assault of her, including without limitation by continuing to retain and failing to terminate Figliolo and by failing to take any other reasonable measures to prevent his assault of her.

As a result of the foregoing actions of Negligence Defendants, Plaintiff

has been damaged and is entitled to compensatory and punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and order:

a.    Enjoining defendants from further discriminatory and retaliatory conduct directed towards Plaintiff;

b.    Awarding compensatory damages for all economic loss, including, but not limited to, back pay, front pay, bonuses, incentive pay, pension benefits, expense reimbursement and all other benefits to which Plaintiff is entitled;

c.    Awarding compensatory damages for all other economic loss, physical and emotional distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm;

d.    Awarding punitive damages;

e.    Awarding costs and disbursements of this suit, including reasonable attorney's fees;

f.    Awarding pre-judgment interest;

g.    Awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all matters triable by a jury.

Respectfully submitted,

Dated: May 12, 2008
      New York, New York

By: _____
    Jonathan S. Abady (JA 5147)
    Mariann Wang (MW 7417)

EMERY CELLI BRINCKERHOFF & ABADY LLP
75 ROCKEFELLER PLAZA
NEW YORK, NEW YORK 10019
(212) 763-5000
(212) 763-5001 (FAX)

JOSEPH & HERZFELD LLP
757 THIRD AVENUE
25TH FLOOR
NEW YORK, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiff*